OVERTON, Justice.
 

 This is a suit, sounding in damages, to recover $1,900 for the destruction of some old gin machinery stored in a temporary and inexpensive structure, erected for that purpose on plaintiff’s land, at Midway, abutting defendant’s right of way. The amount sued for was originally $4,000, but, after judgment rendered, was reduced by remittitur to $1,900. See Givens v. Yazoo
 
 &
 
 Mississippi Valley Railroad Co., 173 La. 372, 137 So. 66.
 

 The machinery, with the exception of a few parts, was secondhand machinery, when purchased in 1919. It was operated until some time in 1923, when the gin was permitted to lie idle for three years, and then was dismantled and stored under the shed erected to protect it, where, on July 15, 1929, it was destroyed by fire.
 

 Adjacent to the spot where the machinery was stored, there was a sawmill which threw sawdust and shavings over the ground, some six inches deep, in the years 1924, 1925, and 1926. The sawdust and the shavings were still there at the time of the fire, though in a dried and decaying condition.
 

 It is plaintiff’s contention that the fire was caused by defendant’s negligence in operating one of its trains in such a manner as to cause a spark from- the locomotive to start the fire. In the court below there was judgment for plaintiff in the sum of $500, with legal interest from judicial demand.
 

 As we appreciate the case, pretermitting any reference to defendant’s alleged negligence, its decision hinges upon the sufficiency of the evidence, which is of a circumstantial nature, to show that defendant’s train started the fire.
 

 Four of defendant’s witnesses testified touching the fire, but the evidence of only three of these, namely, Carry, McGuire, and Bailey, throws any light whatever on its origin. Carry does not claim to have seen the fire when it started, but he testifies that early in the morning of July 2,1929, on which day the fire started, he passed the place where the fire began its course, and saw no fire, but that, on his return, which was about midnight, he saw the sawdust afire. McGuire testified that he saw the train pass, which was about 9 o’clock in the morning. He was then in his field, about a quarter of a mile distant from where the machinery was stored. He returned, after the train passed, to his homo to get a drink of water. When he reached there, which was about five minutes after the train passed, he noticed smoke at the edge of defendant’s right of way, and noticed the grass burning at that point. Bailey testifies that, while at his home, which was about 100 yards from the sawdust at the old mill site, he saw the train pass at approximately 9 o’clock in the morning on July 2, 1929, and that five minutes later he noticed fire burning at the side of the railroad. He testifies that, when the train passed his home, he saw a number of sparks coming out of the locomotive. These sparks, he says, did not ascend' very high, and that he could not say whether they were burning brightly on that morning, or whether it was a bright or cloudy day, nor
 
 *799
 
 did he know whether any sparks fell near his home or not.
 

 On the other hand, the locomotive that it Is argued caused the fire was in April, preceding the destruction of the machinery, sent to Paducah, Ky., for an overhauling, and came back practically new. The evidence before us shows that the locomotive was in good condition, and that it was provided with a spark arrester. A locomotive in good condition, provided with a proper spark arrester, should not have thrown a spark one-half the width of the right of way, which half was 50 feet, of sufficient strength to last until it hit the ground.
 

 The fire, after starting on the edge of the right of way in the grass there, ignited the sawdust and the shavings, which, as well as the grass, were dry. It gradually burned through the width of the sawdust until thirteen days later it set the framework
 
 of
 
 the machinery and the mixed sawdust and shavings beneath it afire, resulting in the destruction of the machinery. During these thirteen days plaintiff was absent from home. None of his neighbors, some of whom resided on plaintiff’s place, strange to say, made an effort to put the fire out. This may be said also of the section crew. This crew noticed the fire burning in the sawdust.
 

 Our conclusion is that, while it is possible.the passing train caused the fire, it is not legally certain that it did cause it, which must appear to recover. The place was open. Any one might have gone upon it, and carelessly dropped a lighted cigarette or cigar. In fact, boys were seen playing near the fire when it was still small. One of them, or any one else, without knowledge of the fact, might have accidentally caused the fire. There is no evidence that the locomotive put on additional power in passing the mill site, which might have been more conducive to the emission of dangerous sparks, but there is evidence to the contrary. The engine was an average sized one, fully capable of passing the place, with its three passenger coaches, without the slightest trouble. No fires were seen along the. right of way, although for some little distance along it there was chance for a defective spark arrester to set the grass afire. It may be said that all engines, operated by coal, throw off sparks, even when provided with a proper spark arrester, though in the latter instance, the sparks emitted are too small to be dangerous, and that it is, of necessity, not negligence to operate such a locomotive. The evidence, we think, leaves the case too doubtful to award plaintiff a judgment.
 

 The judgment is set aside, and plaintiff’s demand is rejected at his costs in both courts.